Kent F. Larsen, Esq.
Nevada Bar No. 3463
Chet A. Glover, Esq.
Nevada Bar No. 10054
SMITH LARSEN & WIXOM
1935 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 252-5002
Fax: (702) 252-5006
Email: kfl@slwlaw.com
           cag@slwlaw.com
Attorneys for Defendant
Chase Bank USA,
National Association

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| VALERIE BLAZO, | CASE NO: 2:10-cv-01800-GMN-GWF |
| Plaintiff, | **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER:** |
| v. | **1)   GRANTING CHASE BANK USA, N.A.'S MOTION FOR SUMMARY JUDGMENT; AND** |
| CHASE BANK USA, N.A. | |
| Defendant. | **2)   DENYING VALERIE BLAZO'S MOTION FOR SUMMARY JUDGMENT** |

On September 27, 2013 at 10:00 a.m., a hearing was held relative to Plaintiff Valerie Blazo's ("Plaintiff" or "Blazo") Motion for Summary Judgment as to Liability Under Both the Fair Credit Billing Act and Fair Credit Report Act ("Blazo MSJ") (Dkt. 34) and Defendant Chase Bank USA, N.A.'s ("Chase") Motion for Summary Judgment (hereinafter "Chase MSJ") (Dkt. 35). Mitchell D. Gliner, Esq. appeared at the hearing for Blazo, and Chet A. Glover, Esq. appeared at the hearing for Chase.

Having reviewed each of the motions, related briefs, exhibits thereto, and having

1

considered the oral argument of each of the parties, the Court hereby makes the following

findings of fact and conclusions of law.

## FINDINGS OF FACT[1]

1.      In or about December 2001, Plaintiff opened a credit card account with Chase (the

"Chase Account"). *See* Chase MSJ at Exhibit J, pp. 139-40 and Exhibit K, respectively.

2.      At the time Plaintiff opened the Chase Account, Plaintiff enrolled in the

automated electronic payment program for her Chase Account, where her checking account at

Wells Fargo Bank, N.A. would be automatically debited for the minimum payment due if no

other separate payment had been made. *See id.* at Exhibit J, pp. 139-40, Exhibit L, and Exhibit

M, respectively.

3.      Plaintiff never revoked the authorization to make the automatic monthly payments

on the Chase Account from Plaintiff's checking account at Wells Fargo Bank, N.A. *See id.* at

Exhibit J, pp. 141-42.

4.      In late 2006, Plaintiff entered into a contract (the "Contract") with Presidential

Pools and Spas ("PPS") to construct a swimming pool (the "Pool") on Plaintiff's real property

located at 17939 W. Desert Lane, Surprise, Arizona 85388 (the "Property"). *See id.* at Exhibit J,

p. 54 and Exhibit Q.  According to the Contract, the construction of the swimming pool was to

cost $43,108.15.

5.      Pursuant to the Contract, and in accordance with Arizona law, Plaintiff was

obligated to pay PPS for the construction of the Pool as follows: (a) $1,000 down payment; (b)

30% payment upon completion of excavation; (c) 30% payment upon completion of plumbing,

---

[1] To the extent any Finding of Fact should be properly designated a Conclusion of Law, it shall be deemed a Conclusion of Law.  To the extent any Conclusion of Law should properly be designated a Finding of Fact, it shall be deemed a Finding of Fact.

2

SMITH LARSEN & WIXOM

ATTORNEYS

HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

steel, and shotcrete; (d) 30% payment upon completion of decking; and (e) 10% payment prior to interior finish. *See id.* at Exhibit B, p. 17 and Exhibit Q.

6.      As of July 23, 2007, Plaintiff had paid the $1,000 down payment, and the first two of the three required payments of $13,363.77, with checks drawn on her checking account. *See id.* at Exhibit B, pp. 18-19, Exhibit C, and Exhibit S.

7.      As of October 9, 2007, the Pool was completed, with the exception of the application of the final interior plaster finish, and the filling and start-up of Pool. At that time, the City of Surprise Arizona conducted its final inspection of the Pool. *See id.* at Exhibit B, p. 26 and Exhibit S.

8.      As of October, 2007, Plaintiff refused to make further payments on the Contract with PPS. Plaintiff informed PPS that she did not want to pay any more money for the Pool, as she felt she was entitled to compensation for delays in the construction and Plaintiff did not like the appearance of the paver stones she selected for installation as decking around the Pool. *See id.* at Exhibit B, pp. 27-28. At that time, Plaintiff owed PPS $13,363.77 for the third progress payment and $4,454.59 for the final payment, pursuant to the Contract. *See id.* at p. 28.

9.      Plaintiff and PPS ultimately agreed to modify the payment provisions of the Contract as follows: (i) Plaintiff would pay PPS the amount of $13,363.77 to schedule and complete the interior plastering of the Pool and the start up within "7-8 working days;" (ii) PPS would waive the final scheduled payment of $4,454.59; and (iii) PPS would release the lien. *See id.* at Exhibit D. This agreement was dated "7/14/08." *See id.*

10.      On the next day, July 15, 2008, Plaintiff gave PPS authorization to charge $13,363.77 (the "Charge") to the Chase Account. *See id.* at Exhibit E.

3

11.     The completed construction and mechanical start-up of the Pool occurred no later than July 21, 2008.  *See id.* at Exhibit B, pp. 36, 37, and 66.  This fact was undisputed by Plaintiff.

12.     Notwithstanding the July 14, 2008 resolution agreement, *see id.* at Exhibit D and the fact that the Pool was completed by July 21, 2008, on September 4, 2008, Plaintiff faxed to Chase a "dispute form" regarding the subject charge to the Chase Account.  *See id.* at Exhibit G. Pursuant to the dispute form, Plaintiff alleged that her dispute was regarding the "poor quality of product or services."  *See id.*

13.     There is no evidence that Plaintiff ever rejected the Pool or took any actions to remove the Pool from the Property.  Furthermore, all evidence highlights the fact that Plaintiff accepted the Pool and intended to keep the pavers that were the primary issue of concern in her merchant dispute.  *See id.* at Exhibit J, p. 119 and Exhibit W at Chase-Bla000198.  In addition, Plaintiff testified at her deposition that she uses the Pool as often as four times a day.  *See id.* at Exhibit J, pp. 94-95.

14.     All evidence points to the fact that Plaintiff's merchant dispute was related to quality of the goods, services, and/or property she accepted.

15.     On or about October 28, 2008, Chase provisionally re-credited (the "Provisional Credit") the Chase Account for the July 15, 2008 Charge in the amount of $13,363.77, and Chase sent Plaintiff a letter that specifically stated, "we will review the dispute again and contact you if we need more information or need to re-bill your account."  *See id.* at Exhibit H.  The Provisional Credit was issued within 90 days of Plaintiff informing Chase of her merchant dispute.

4

16.     Thereafter, Chase challenged the Charge on behalf of Plaintiff against PPS for approximately 15 months until MasterCard ultimately determined that Plaintiff's dispute was "without merit" and fined Chase for pursuing the dispute. *See id.* at Exhibit AA, pp. 48-49.

17.     On or about July 13, 2009, Plaintiff and PPS entered into a written, settlement agreement whereby PPS agreed to make certain additional repairs/alterations to the Pool, and Plaintiff agreed to dismiss her "reopened" Arizona Registrar of Contractor's ("ROC") complaint, which was ordered dismissed due to settlement. *See id.* at Exhibit BB and Exhibit B at pp. 64-65, respectively.  The issues referenced in the July 13, 2009 settlement agreement all concerned warranty work and warranty repairs. *See id., generally.*

18.     There is no evidence that Plaintiff informed Chase of the settlement agreement she reached with PPS.

19.     Because Chase and Plaintiff did not prevail on the merchant dispute against PPS, Chase re-billed the Chase Account on or about December 9, 2009, about four months after Plaintiff had settled her remaining disputes with PPS. *See id.* at Exhibit DD.

20.     Pursuant to the existing direction for automated electronic payments on the Chase Account, subsequent to the re-billing of the Charge, on May 18, 2010 and again on June 21, 2010, Chase initiated automated/electronic payments of $267.00 and $261.00, respectively, from Plaintiff's Wells Fargo Bank, N.A. account, as Chase had on file an authorization form which allowed it to process such payments. *See id.* at Exhibits L and M.  Those charges were later reversed.  *See id.* at Exhibit J, p. 157.

21.     Plaintiff filed the present action in October 2010.

22.     Plaintiff then contacted certain credit bureaus disputing the propriety of the re-

5

SMITH LARSEN & WIXOM

ATTORNEYS

HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

1  billed charge and Chase's reporting on the Chase Account, which caused the credit reporting

2  agencies to notify Chase of Plaintiff's credit reporting dispute. *See id.* at Exhibit EE.

3      23.    Chase responded to the credit reporting agencies by affirming its existing

4  reporting on the Chase Account (including the balance), while also reporting the Chase Account

5  as disputed, given Plaintiff's continued position that she should not have to pay the Charge. *See*

6  *id.* at Exhibit FF and Exhibit AA, pp. 37-38.

7

8                          **CONCLUSIONS OF LAW**

9      1.     Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,

10 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11 any, show that there is no genuine issue as to any material fact and that the moving party is

12 entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   The

13 plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for

14 discovery and upon motion, against a party who fails to make a showing sufficient to establish

15 the existence of an element essential to that party's case, and on which that party will bear the

16 burden of proof at trial." *Id.*   In such a situation, there can be "no genuine issue as to any

17 material fact," since a complete failure of proof concerning an essential element of the

18 nonmoving party's case necessarily renders all other facts immaterial. *Id.*   The party opposing

19 summary judgment must "do more than simply show that there is some metaphysical doubt as to

20 material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 485 U.S. 574, 586 (1986).   If

21 the opposing party's "evidence is merely colorable or is not significantly probative, summary

22 judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

23     2.     The Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666(b)(3), defines a billing

6

error as "A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction."

3.     12 C.F.R. § 226.13(a)(3), Supp. I to Part 226 at p. 517 further states that a "billing error" under Section 1666(b)(3) does not include "dispute[s] relating to the quality of property or services that the consumer accepts."

4.     Because the Court finds that Plaintiff accepted the Pool and that Plaintiff's merchant dispute was regarding the quality of goods, services, or property that Plaintiff accepted, no "billing error" occurred under the FCBA. *See* 15 U.S.C. § 1666(b)(3) and 12 C.F.R. § 226.13(a)(3), Supp. I to Part 226 at p. 517.

5.     The Court further finds that even if a "billing error" had occurred, which it did not, Chase provided the Provisional Credit within 90 days of Plaintiff communicating her merchant dispute to Chase. Therefore, Chase complied with 12 C.F.R. § 226.13(e) (2008).

6.     Plaintiff failed to present evidence sufficient to raise a genuine issue of material fact in support of her claim under the FCBA, such that summary judgment in favor of Chase on this claim is proper.

7.     The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, exclusively governs "credit reporting" claims such as those raised by Plaintiff.

8.     Under the FCRA, there is a general preemption provision relating to common law claims brought against furnishers of information ("furnishers"). 15 U.S.C. § 1681t(b)(1)(F); and *Karony v. Dollar Loan Center, LLC*, 2010 WL 5186065 at *4 (D. Nev. 2010).

9.     Under the FCRA, a furnisher of information to credit reporting agencies

7

("CRAs") has <u>two</u> duties: (1) the duty to provide accurate information (15 U.S.C. § 1681s-2(a));

and (2) the duty to investigate the accuracy of reported information upon receiving notice of a

dispute (15 U.S.C. § 1681s-2(b)).  Chase is a furnisher under 15 U.S.C. § 1681e(d)(1)(A).

10.     The first duty under 15 U.S.C. § 1681s-2(a) is enforced exclusively by state and

federal officials pursuant to 15 U.S.C. § 1681s-2(d).  There is no private right of action against a

furnisher for failing to provide accurate information.  *Nelson v. Chase Manhattan Mortgage*

*Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).

11.     In connection with the second duty (i.e., 15 U.S.C. § 1681s-2(b)), if a CRA

notifies a furnisher regarding a consumer dispute, the furnisher must adequately investigate and

correct any inaccuracy, and a consumer may have a private right of action for the furnisher's

alleged failure to do so.  15 U.S.C. § 1681s-2(b).

12.     The furnisher's duty to reinvestigate begins with and stems from the transmission

of a dispute notice from the CRA.  *See Drew v. Equifax Info. Serv., LLC*, 2012 WL 3186110 at

*3 (9th Cir. (Cal.) 2012) (*citing* 15 U.S.C. § 1681i(a)(2) and *Gorman v. Wolpoff & Abramson,*

*LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009)).

13.     It is the CRA's duty, not the furnisher's, to ensure that the furnisher has all

relevant information about the dispute.  15 U.S.C. 1681i(a)(2)(A) ("The notice shall include all

relevant information regarding the dispute that the agency has received from the consumer or

reseller.").  Thus, "[t]he pertinent question is ... whether the furnisher's procedures were

reasonable in light of what it [the furnisher] learned about the nature of the dispute from the

description in the CRA's notice of dispute."  *See Gorman*, 584 F.3d at 1157.  "[A]n FCRA

violation is tied to the reasonableness of an investigation rather than the accuracy of its results."

SMITH LARSEN & WIXOM

A T T O R N E Y S
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

8

*Drew*, 2012 WL 3186110 at *8.

14.     Here, Plaintiff did not provide the Court with any admissible evidence, which demonstrated that Chase's initial investigation was unreasonable.   To the contrary, Plaintiff admitted that Chase's initial investigation of the subject merchant dispute was reasonable.   *See* Blazo MSJ at 5:2-3 ("Chase initially performed a reasonable investigation.").   And, Plaintiff did not provide the Court with any admissible evidence, which demonstrated that Plaintiff ever informed the various CRAs that Chase's initial investigation lacked reliability or that new information was available to discover.

15.     Plaintiff did not provide the Court with any admissible evidence, which demonstrated that Chase's reporting to the various CRAs was inaccurate.   *See Carvalho v. Equifax Info. Serv., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision … does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement.") (citations omitted).   Chase reported to the CRAs that the Chase Account was in dispute, which is accurate and not misleading.   Although Plaintiff vaguely claims that Chase's reporting was inaccurate regarding the date on which the Chase Account will continue to be reported on Plaintiff's credit report (i.e. March 2017), Plaintiff failed to submit any admissible evidence to the Court demonstrating that Chase in its reinvestigation provided the allegedly inaccurate information to the CRAs.   Further, Plaintiff failed to provide any admissible evidence to the Court demonstrating that Plaintiff challenged this allegedly inaccurate information/date with the CRAs first as required by 15 U.S.C. § 1681i(a)(2).

16.     Plaintiff did not provide the Court with any admissible evidence, which

9

demonstrated what information, if any, the various CRAs reported to Chase after Plaintiff communicated with the CRAs.

17.     Plaintiff failed to provide any evidence that might have raise a genuine question of material fact that Chase violated the FCRA in any way.

18.     Plaintiff's common law claims of defamation and conversion are preempted by the FCRA. 15 U.S.C. § 1681t(b)(1)(F); *see also Karony v. Dollar Loan Center, LLC*, 2010 WL 5186065 at *4 (D. Nev. 2010).  Even if these claims were not preempted by the FCRA, which they are, these claims would still fail as a matter of law.

a. Plaintiff's claim of defamation would fail under Nevada law because Plaintiff failed to demonstrate that Chase made any inaccurate report to a CRA and/or that any potentially inaccurate information on her credit report is attributable to Chase. Thus, Plaintiff could not prevail on a claim of defamation under Nevada law, which requires a false or defamatory statement to a third party. *See Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374 (2009) (citations omitted).

b. Plaintiff's claim of conversion would fail under Nevada law because Chase had authorization to withdraw money from Plaintiff's Wells Fargo Bank, N.A. account to pay for charges on the Chase Account. *See* Chase MSJ at Exhibit J, pp. 139-40, Exhibit L, and Exhibit M, respectively.  Plaintiff never revoked the authorization to make the automatic monthly payments on the Chase Account from Plaintiff's checking account at Wells Fargo Bank, N.A. *See id.* at Exhibit J, pp. 141-42.  Thus, Plaintiff failed to demonstrate that Chase exerted dominion

10

SMITH LARSEN & WIXOM

A T T O R N E Y S
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL. (702) 252-5002 • FAX (702) 252-5006

"wrongfully over [Plaintiff's] property in denial of, or inconsistent with [her] title or rights therein or in derogation, exclusion, or defiance of such title or rights." *See Boorman v. Nevada Mem'l Cremation Society*, 236 P.3d 4 at *9 (Nev. 2010).

## ORDER

THEREFORE, in light of the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Summary Judgment as to Liability Under Both the Fair Credit Billing Act and Fair Credit Report Act (Dkt. 34) is DENIED in its entirety.

**IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED** that Chase's Motion for Summary Judgment (Dkt. 35) is GRANTED in its entirety.

...

...

...

...

...

...

...

...

...

...

...

11

**IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment is entered against Plaintiff and in favor of Chase on all of Plaintiff's claims for relief.

**IT IS SO ORDERED.**

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

**DATED:** October 17, 2013.

Reviewed Without Concurrence.

/s/ Mitchell D. Gliner
Mitchell D. Gliner, Esq.
Nevada Bar No. 3419
Counsel for Blazo

SUBMITTED BY:

SMITH LARSEN & WIXOM

/s/ Chet A. Glover
Kent F. Larsen, Esq.
Nevada Bar No. 3463
Chet A. Glover, Esq.
Nevada Bar No. 10054
Counsel for Chase

12